**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
100 Mulberry Street
Three Gateway Center
Newark, New Jersey 07102
(973) 622-7711
Attorneys for Plaintiff, Principal Life Insurance Company

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y
★ JAN 15 2010 ★
BROOKLYN OFFICE

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PRINCIPAL LIFE INSURANCE COMPANY, | CIVIL ACTION NO. |
| Plaintiff, | |
| vs. | **CV 10 - 0185** |
| A. WERZBERGER IRREVOCABLE LIFE INSURANCE TRUST, NECHEMIA WERZBERGER, ARON WERZBERGER, and ALEXANDER WERZBERGER, | GARAUFIS, J. |
| Defendants. | REYES, M.J |

## CIVIL ACTION- COMPLAINT

Principal Life Insurance Company ("Principal Life"), maintaining its principal place of business located at 711 High Street, Des Moines, Iowa 50392, by way of complaint against the defendants, and each of them, alleges and says:

### PARTIES

1.      Principal Life is, and during all times relevant has been, in the business of underwriting policies of life insurance and is authorized to transact the business of insurance in the State of New Jersey.

2.    The A. Werzberger Irrevocable Life Insurance Trust (the "Werzberger Trust") is purportedly established, governed, and to be construed in accordance with the laws of the State of New York.  Upon information and belief, the Werzberger Trust was fraudulently established as a vehicle through which the defendants could procure from Principal Life an illegal and unenforceable Stranger-Originated Life Insurance ("STOLI") policy with a face amount of $10,000,000.00 (the "Policy") insuring the life of Alexander Werzberger while hiding and disguising that the beneficiaries of the Werzberger Trust, which owned the policy, lacked any insurable interest in the life of Alexander Werzberger.

3.    Nechemia Werzberger was represented to be a Trustee of the Werzberger Trust and maintains a primary residence and domicile located at 1547-56th Street, Brooklyn, New York 11219.

4.    Aron Werzberger was represented to be a Trustee of the Werzberger Trust and, maintains a primary residence and domicile located in the State of New York.

5.    Alexander Werzberger ("Werzberger") is the named insured under a policy of life insurance bearing policy number 6089123 issued by Principal Life (the "Policy") and maintains a primary residence and domicile located at 7 Ehal Court, #201, Monroe, New York 10950.

## JURISDICTION AND VENUE

6.    Principal Life is a corporation of, and maintains its principal place of business in, the State of Iowa and is a citizen of the State of Iowa within the meaning and intent of 28 U.S.C. § 1332.

7.    The Werzberger Trust is a citizen of the State of New York within the meaning and intent of 28 U.S.C. § 1332.

2

8.      Nechemia Werzberger is a citizen of the State of New York within the meaning and intent of 28 U.S.C. § 1332.

9.      Aron Werzberger is a citizen of the State of New York within the meaning and intent of 28 U.S.C. § 1332.

10.     Werzberger is a citizen of the State of New York within the meaning and intent of 28 U.S.C. § 1332.

11.     This Court has jurisdiction of and over the subject matter of this action pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties in that it is wholly between citizens of different states and foreign corporations and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

12.     This Court has personal jurisdiction over the defendants as the Policy was applied for and delivered in the State of New Jersey and the defendants have minimum contacts with the State of New Jersey.

13.     This action has been properly venued in this District Court pursuant to 28 U.S.C. §1391.

## BACKGROUND

## STRANGER-ORIGINATED LIFE INSURANCE

14.     In recent years, a secondary market has emerged in which speculative investors have sought to obtain, and in many cases have succeeded in obtaining, a pecuniary interest in life insurance policies.  Although there are other varieties of secondary market transactions, the most problematic scenario of which is where the insured and/or policy owner intended at the inception for the policy or a beneficial interest in the entity that owns the policy to be sold and the speculators require or agree to acquire an interest in the life insurance policy.

3

15.     These speculators do not acquire an interest in life insurance policies insuring the lives of persons with whom they have a familiar relationship, or in whose longevity they possess a legally recognized interest; instead, these speculators purchase policies that insure the lives of strangers - - or, in many cases, purchase a beneficial interest in an insurance trust or ownership in shell corporations that own those policies - - in the expectation that they will profit by the death of the insured.  No insurable interest exists between the speculators and the persons whose life is insured.  Such arrangements are commonly referred to as an IOLI which stands for "Investor-Originated Life Insurance" or STOLI, which stands for "Stranger-Originated Life Insurance," sometimes known as "Stranger-Owned Life Insurance."

16.     STOLI transactions run afoul of state's insurable interest laws which protect the integrity of life insurance by requiring that a policy owner had a cognizable interest in the longevity of the insured at the time the policy is issued.

17.     Speculators, who are the true intended owners of the STOLI policies, attempt to circumvent these laws by constructing their transactions in order to hide these impermissible investments.  All STOLI programs have one thing in common:  their objective is to give investors who have no insurable interest in the life of the insured a stake in the life insurance policy of a complete stranger.

18.     Often, applications seeking the issuance of these life insurance policies contain material misrepresentations pertaining to the proposed insured's net income, net worth, occupation and other life insurance in force or applied for, and in some cases, the application and trust documents submitted to the insurer during the underwriting of the policy contain forged signatures of the proposed insured.

19.     In some cases, the proposed insured lacks the requisite knowledge and consent to

4

the life insurance policy, which was procured by the fraud and misrepresentation of these stranger investors.

20.    A typical STOLI transaction was described by a court as follows:

> This case concerns an aspect of a growing cottage industry in the insurance market, known as stranger-owned life insurance policies or "STOLI" plans, in which an individual, typically an elderly one, procures life insurance on his own life in order to subsequently assign the policy to a third party following the lapse of the two-year contestable period. STOLI transactions are the product of the burgeoning "life settlements" market, in which insureds sell unneeded or unaffordable permanent policies to investors. See *Jensen & Leimberg*, 885 supra, at 111 STOLI schemes emerged as investors demand for these policies exceeded supply, leading industry speculators to solicit insureds to take out additional policies, even if the insureds had no particular need for supplemental insurance coverage. Often, the insureds are persuaded to engage in these STOLI transactions because their bank accounts have run dry and they are forced to spend increasing amounts of money on medical care. As one court put it, "[o]ften pejoratively, termed 'stranger-owned life insurance policies' these policies enable the insured to obtain ready cash by selling his policy to a stranger whose only interest in the insured is his early demise." *Life Pro. Clearing LLC v. Angel*, 520 F.Supp.2d 646, 648 (S.D.N.Y. 2008).

> A typical STOLI transaction is structured as follows. An agent attempts to sell a life insurance policy to an elderly insurable candidate, and offers the candidate up-front cash in exchange for promising a future sale of the policy. The agent informs the candidate that the candidate will be able to obtain the policy at virtually no cost to himself, because the agent has secured non-recourse financing to purchase the policy. The candidate then acts as a "nominal grantor" of a life insurance trust than is used to apply for the policy. "At that time, the agent will tell the insured that, in all probability, the policy will be sold to investors for a price that will pay the loan and accrued interest, leaving a profit to split between the agent and the insured... If the insured survives the two-year contestability period on the policy], the owner (the life insurance trustee) typically has two options, in addition to the sale of the policies to investors: (1) have the insured pay the outstanding debt with accrued interest and retain the policy; or (2) transfer the policy to the lender in lieu of foreclosure." *Jensen & Leimberg*, supra, at 111. The insureds are usually able to garner significantly greater sums from speculators than they would receive by surrendering the policy to the insurance company. See Liam Pleven & Rachel Emma Silverman, Cashing in An Insurance Man Builds A Lively Business in Death-As Life Settlements Boom, Banks, Regulators Circle,

Wall St. J., Nov. 27, 2007, at A1.

<u>Lincoln National Life Insurance Company v. Calhoun, et al.</u>, 596 F. Supp. 2d 882 884-885, (D.N.J. 2009)

21.     As described by another court:

> In such an arrangement (stranger-originated life insurance or investor-initiated life insurance) a policy is purchased, not with a view of the insured paying premiums for the benefit of the insured's family, but with a view toward reselling the policy to an "outside investor" in a secondary market for the life insurance. The outside investor pays the insured in order to make a "wager" on the duration of the insured's life.

*   *   *

> Under New York Law, as well as the long-standing public policy recognized by New York courts, it is illegal for anyone to procure, or cause to be procured, a life insurance policy on an insured for the benefit of an outside investor who does not have an insurable interest in the insured. To conceal the real policyholder's lack of insurable interest from the insurer, as well as to induce the insured's application, investors establish an irrevocable trust solely to hold the target insurance policy. The trust is established around the time that the insured submits his application, and is named as the owner and beneficiary of the policy with the beneficiary being entitled to the death benefits payable under the policy. The beneficiary of the trust is typically disclosed to the insurer and designed as the insured or a family member. Once the policy is issued, the insured transfers the beneficial interest in the policy to an outside investor in exchange for a significant lump sum payment.

<u>Phoenix Life Ins. v. Irwin Levinson Ins. Tr. II</u>, 2009 New York Slip Op. 30383

## **FIRST COUNT**

22.     On December 4, 2007, Nechemia Werzberger, as Trustee of the Werzberger Trust and policy owner, and Werzberger, as the proposed insured, executed an application seeking the issuance of a policy of life insurance with a face amount death benefit of $10,000,000.00, in Mahwah, New Jersey. The insurance application seeking the issuance of the Policy is fully

6

incorporated herein by reference as if the same were fully set forth at length.

23.     In executing the insurance applications, Nechemia Werzberger and Werzberger knew that they were required to provide truthful, accurate and honest answers to the questions present on the insurance applications.

24.     In executing the insurance applications, Nechemia Werzberger and Werzberger knew that Principal Life would rely upon the answers recorded on the insurance applications in determining whether Werzberger was insurable and otherwise qualified for the policy of life insurance applied for.

25.     In executing the insurance applications, Nechemia Werzberger and Werzberger knew they may be subject to civil and/or criminal penalties in the event they knowingly made false statements in order to obtain the policy of life insurance.

26.     In executing the insurance applications seeking the issuance of the policy of life insurance, Nechemia Werzberger and Werzberger provided the following answers to the questions contained thereon:

### PART A

1.      **PERSONAL INFORMATION ABOUT THE PROPOSED INSURED**

Occupation
*Diamond Dealer*


5.      **OWNERSHIP INFORMATION**
Owner Name (If trust, provide name of trust)
*A. Werzberger Irrevocable Life Ins. Trust*

Address
*1547 56th Street*

City, State, Zip Code
*Brooklyn, NY 11219*

Date of Birth (If trust, provide date of trust)
*4/21/2007*

## 6.   CHANGE OF OWNERSHIP

(a) Is there a consideration that any group of investors will obtain any right, title, or interest in any policy issued on the life of the Proposed Insured(s) as a result of this application? ☐ Yes  ☒ No
If yes, explain.

(b) Will you borrow money to pay the premiums for this policy or have someone else pay these premiums for you in return for an assignment of policy values back to them?            ☐ Yes  ☒ No
If yes, explain and complete premium financing acknowledgment form.

## 7. OTHER INSURANCE

(a) Is there other life insurance or annuities in force or applied for?
                                                                ☒ Yes  ☐ No
Insured's Name
*Alexander Werzberger*

Company
*JP*

Amount
*$10,000,000*

Check if Pending
☒

Primary Purpose
*Estate planning*

## PART B

## INCOME/OCCUPATION

7.   Annual income from occupation $*500,000*
     Other Income $*300,000*
     Sources of other income *Real Estate*
     Net Worth (Assets – Liabilities) $*30 mil.* +

8.   Primary occupation  *Diamond Dealer*
     Employer  *Self*

8

## PART C – AGREEMENT/AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION

### AGREEMENT

**Statements in Application:** I represent that all statements in this application are true and complete to the best of my knowledge and belief and were correctly recorded before I signed my name below. I understand and agree that the statements in this application, including statements by the Proposed Insured in any medical questionnaire that becomes a part of this application, shall be the basis for any insurance issued. I also understand that misrepresentations can mean denial of an otherwise valid claim and rescission of the policy during the contestable period.

27.     Werzberger and Isaac Teitelbaum ("Teitelbaum"), the insurance producer, executed a Confidential Financial Statement in which the represented purpose for the Policy was "Estate Liquidity" and the need for the Policy was for "estate planning." In the Confidential Financial Statement, it was represented that Werzberger's net worth exceeded $30,000,000.

28.     Nechemia Werzberger also executed a Policy Owner Intent form on December 4, 2007, in which they provided the following responses to the questions presented therein:

1. Is there an intention that any group of investors will obtain any right, title, or interest in any policy issued on the life of the Proposed Insured(s) as a result of the policy applied for?   ☐ Yes   ☒ No
If yes, explain.

2. Will you borrow money to pay the premiums for this policy or have someone else pay these premiums for you in return for an assignment of policy values back to them?   ☐ Yes   ☒ No
If yes, explain and complete premium financing acknowledgment form (DD2558).

3. Have you transferred or assigned any right, title, or interest in any life insurance or annuity contract other than absolute assignment for Internal Revenue Code 1035 exchange?   ☐ Yes   ☒ No

29.     Principal Life was also furnished with a Trustee Certification and Indemnification

form purportedly signed by Nechemia Werzberger as Trustee.

30.     Nechemia   Werzberger   executed   an   Acknowledgment   of   Understanding

Regarding a Proposed Premium Financing Arrangement acknowledging the following:

> Principal Life will not accept applications submitted as part of a
> non-recourse loan arrangement or through any other arrangement
> that is likely to result in the transfer of the policy to a group of
> investors. Non-recourse loans are those loans where the lender is
> only entitled to repayment from the policy being purchased. If a
> policy is transferred to the lender under such circumstances, such
> policy will generally eventually be sold to a group of investors.
> Principal Life feels that such Investor Owned Life Insurance
> violates at least the spirit of insurable interest rules and is generally
> not in the long-term best interest of our clients.

31.     In connection with the insurance application, Teitelbaum submitted to Principal

Life a correspondence in which he stated:

> Enclosed is the formal application on Alexander Werzberger. Mr.
> Werzberger is a successful diamond dealer and also invested in
> real estate in New York. He admits to a net worth of $30 Million
> plus, but by all means, that is a very conservative estimate.
>
> We have been advised that a standard offer on $10 Million of
> coverage was offered, subject to the formal paperwork, and the
> case being placed in 2007. Please expedite policy issue to help
> make this happen.
>
> Sincerely,
>
> /s/ Isaac Teitelbaum
> *Broker of Record*

32.     In connection with the insurance application, Teitelbaum executed a Producer

Report dated December 4, 2007, which identified Teitelbaum and Abraham Friedman as the

Primary Servicing Producers, and pursuant to which Teitelbaum represented:

> 12.     Do you know, or have reason to believe, that any group of
> investors plan to obtain any right, title, or interest in any
> policy issued as a result of this application? Or, to the best of
> your knowledge, has the proposed insured or policy owner

ever sold, assigned or transferred ownership in any life policy to an outside investor group?　　☐ Yes　☒ No

\* \* \*

**Marketer Statement:** I certify 1) The above lists all sales/marketing materials used in this sale and/or shown to this client, 2) originals of all materials used in the sale have been left with the client, and, 3) based on all of the information known to me, replacement does not appear inappropriate for this client.

The answers to each question of this application were recorded in my presence exactly as given. I know nothing detrimental to the risk that is not recorded on this form. I request distribution of commissions as indicated on page 1 of this form.

33.　During the underwriting of the Policy, Principal Life was furnished with an Inspection Report which purportedly contains Werzberger's answers during a telephone interview to, among other things, verify the written representations contained in the insurance application.

34.　The Inspection Report furnished to Principal Life records that Werzberger represented that he was self-employed as a diamond dealer, he earned commissions of $500,000, and other income of $300,000 and had total assets of $30,400,000, with no liabilities. Werzberger further represented that the beneficiary of the Policy was a family trust, and the purpose was for estate planning.

35.　It was represented in the Inspection Report that the financial information represented by Werzberger during the telephone interview was confirmed by Werzberger's accountant, Joe Friedman of Brooklyn, New York.

36.　On the basis of the statements and representations contained in the written insurance application, Principal Life approved the issuance of a Policy of life insurance bearing

policy number 6089123 to the Werzberger Trust, as policy owner, which insured the life of Werzberger with a face amount death benefit of $10,000,000.00.

37.     The Policy was delivered to the Nechemia Werzberger on January 15, 2008, in Mahwah, New Jersey, at which time Nechemia Werzberger purportedly executed an Acknowledgment of Delivery, Amendment to Application, and Supplemental Statement form.

38.     In connection with the issuance of the policy of life insurance, Principal Life paid commissions to insurance brokers, including Teitelbaum, in the amount of $527,421.00 and incurred additional costs and expenses.   The cost, expenses and brokerage commissions exceeded the premiums that Principal Life has received to date for coverage under the policy of life insurance.

39.     Subsequent to the issuance of the Policy, Principal Life began an audit of certain insurance policies, including the Policy issued to the Werzberger Trust.  In correspondence dated March 26, 2009, to Nechemia Werzberger and Werzberger, Principal Life advised:

> Principal Life Insurance Company ("Principal") is performing an audit of certain insurance policies.  We are attempting to determine whether:
>
> (a) the policies subject to our audit, or beneficial interests in those policies, have been transferred to third parties; and/or
>
> (b) whether such policies were initially procured for the purpose of transferring them, or beneficial interests in them, to third parties in the future; and/or
>
> (c) whether the representations in applications pertaining to your income, net worth, and other life insurance applied for or in force were accurate at the time the policies were issued, delivered and the first premium paid.

40.     Principal Life requested certain documents in connection with audit of the Policy, including the following:

- The complete, signed Trust document (if there have been any changes since you provided us with a copy), including all attachments and schedules, if any;
- Any and all documents indicating a change in the beneficiaries of the Trust, or any proceeds, benefits, or other interests therein;
- Any and all documents indicating a change in the trustee of the Trust;
- Your tax returns for the 2007 and 2008 calendar years.

41.     Principal Life further requested the following:

- Identify the source or sources of funds from which the Trust will pay future premiums on the Policy;
- Provide the name of the person or firm responsible for preparing the trust document;
- Provide a list of real estate properties owned by you or any other entity in which you had an interest as of January 15, 2008, the assessed value of each property, the percentage of ownership you had in each property, the amount of debt owed on each property and the annual income you receive from each property;
- Provide a list of all life insurance that was applied for and/or issued to insure your life as of January 15, 2008, including the name of the insurance company and face amount issued or applied for.

42.     Principal Life did not receive any response from Nechemia Werzberger or Werzberger and, accordingly, issued correspondences dated June 26, 2009, following up on its request and requiring a response by July 13, 2009.  To date, Principal Life has not received any response to its correspondences.

43.     Upon information and belief, the representations and statements made on the applications seeking issuance of the Policy were materially false; Nechemia Werzberger and Werzberger knowingly and intentionally failed and omitted to disclose material facts; and otherwise knowingly and intentionally failed and omitted to accurately, honestly and/or truthfully disclose material information in response to the questions present on the insurance applications which, if disclosed, Principal Life would have declined to issue the certificate of life

insurance.

44.     Specifically, and by way of illustration only, upon information and belief, Nechemia Werzberger and Werzberger knowingly and intentionally made material misstatements of fact, failed, refused and/or omitted to disclose material facts and otherwise failed to correctly answer and disclose:

      a)     that Werzberger did not have a net worth in the amount of over $30,000,000.00 or income over $500,000.

      b)     that the entire transaction involving the application for and issuance of the Policy was a complete sham and subterfuge created and designed to avoid the insurable interest laws of the State of New York.

      c)     that defendants or persons unknown to Principal Life, procured the Policy as part of a pre-conceived plan and scheme to avoid the insurable interest laws, when in truth and fact the transaction was induced by persons who lack any legally insurable interest in the life of Werzberger and for the defendants' benefit.

      d)  that Werzberger provided no input in the drafting of the Werzberger Trust and the Werzberger Trust did not benefit Werzberger's family or other person with a legally recognizable insurance interest in his life.

      e)  the Werzberger Trust was established by the defendants, and other persons whose identity is not known, as a vehicle through which the defendants and others could procure the issuance of the Policy through the life of Werzberger, thereby hiding and disguising that the beneficiaries of the Werzberger Trust lacked any insurable interest in the life of Werzberger and/or to obtain financing from third-parties to pay premiums in consideration for the receipt of an interest in the death benefit to be paid upon the death of Werzberger.

      f)  that Werzberger, at the time of the application for and issuance of the policy of life insurance, could not afford to pay the premiums on the policy

45.     Principal Life has no adequate remedy at law and therefore requests that the Policy be declared null and void and rescinded, *ab initio*.

46.     Alternatively, by reason of the forgoing, the Policy is void as against public

policy as there exists no insurable interest in the life of Werzberger and/or no mutual consent and meeting of the minds between Werzberger, Nechemia Werzberger, Aron Werzberger and Principal Life and, as a consequence of same, is void, *ab initio*.

47.     Alternatively, the Policy is void, *ab initio*, as same was procured by material misrepresentation.

48.     Principal Life has been damaged by virtue of the defendants material misrepresentations and has incurred damages, expenses and costs in connection with, among other things, its underwriting and issuance of a Policy, payment of commissions and fees in connection with administration and servicing of the Policy, investigation of the misrepresentation, fraud and the concealment outlined above, and commencement of the present litigation to enforce its rights.

49.     In light of the foregoing damages, expenses and costs incurred by Principal Life, Principal Life should be permitted to retain the premiums paid on the Policy as an offset to such damages and costs.

50.     Notwithstanding the foregoing, Principal Life stands ready, willing and able to refund or otherwise make payment of all or any portion of the premiums paid for the Policy as directed by the Court in accordance with Principal Life's demand for rescission of the Policy and restoration of the parties to their respective pre-contract positions insofar as is possible and equitable.

51.     Accordingly, Principal Life hereby makes constructive tender of the premiums paid for the Policy and respectfully seeks the Court's direction as to the actual payment of same.

**WHEREFORE** Principal Life demands judgment against the defendants, and each of them, for relief more particular described as follows:

A)       An order declaring and adjudging the Policy of life insurance bearing policy number 6089123 to be null and void and rescinded, *ab initio*; and

B)       An order declaring Principal Life is entitled to keep all premiums paid under the Policy as off set against damages, costs, fees and expenses incurred by Principal Life on account of the defendants fraudulent conduct as necessary to restore Principal Life to is pre-contract position and/or in the alternative permitting Principal Life to deposit with the Clerk of the Court monies representing premiums received for the Policy to be held pending the Court's determination as to the parties respective rights, obligations and liabilities; and

C)       An order providing a monetary judgment in favor of Principal Life in an amount to be determined at the time of trial representing the amount of commissions paid, expenses incurred, and damages sustained, less premiums received; and

D)       An order awarding prejudgment interest, post judgment interest, costs of suit, reasonable attorney fees and such other relief as the Court deems equitable and just.

## SECOND COUNT

52.     Principal Life repeats and realleges each and every allegation contained in paragraphs 1 through 51 as if same were set forth at length herein.

53.     The defendants knowingly, negligently and/or innocently made material misstatements of fact; failed to disclose material facts in response to the questions present on the insurance application; and otherwise failed, refused, and/or omitted to disclose material facts all of which as aforesaid.

54.     Principal Life has no adequate remedy at law and therefore seeks that the Policy of life insurance bearing policy number 6089123 be declared null and void and rescinded, *ab initio*.

16

**WHEREFORE** Principal Life demands judgment against the defendants, and each of them, for relief more particular described as follows:

A)    An order declaring and adjudging the Policy of life insurance bearing policy number 6089123 to be null and void and rescinded, *ab initio*; and

B)    An order declaring Principal Life is entitled to keep all premiums paid under the Policy as off set against damages, costs, fees and expenses incurred by Principal Life on account of the defendants fraudulent conduct as necessary to restore Principal Life to is pre-contract position and/or in the alternative permitting Principal Life to deposit with the Clerk of the Court monies representing premiums received for the Policy to be held pending the Court's determination as to the parties respective rights, obligations and liabilities; and

C)    An order providing a monetary judgment in favor of Principal Life in an amount to be determined at the time of trial representing the amount of commissions paid, expenses incurred, and damages sustained, less premiums received; and

D)    An order awarding prejudgment interest, post judgment interest, costs of suit, reasonable attorney fees and such other relief as the Court deems equitable and just.

## THIRD COUNT

55.    Principal Life repeats and realleges each and every allegation contained in paragraphs 1 through 54 as if same were set forth at length herein

56.    Principal Life issued the Policy pursuant to, and in accordance with, a mistake of fact all of which as aforesaid.

57.    Principal Life has no adequate remedy at law and therefore seeks that the Policy be declared null and void and rescinded, *ab initio*.

**WHEREFORE** Principal Life demands judgment against the defendants, and each of

them, for relief more particular described as follows:

A)     An order declaring and adjudging the Policy of life insurance bearing policy number 6094569 to be null and void and rescinded, *ab initio*; and

B)     An order declaring Principal Life is entitled to keep all premiums paid under the Policy as off set against damages, costs, fees and expenses incurred by Principal Life on account of the defendants fraudulent conduct as necessary to restore Principal Life to is pre-contract position and/or in the alternative permitting Principal Life to deposit with the Clerk of the Court monies representing premiums received for the Policy to be held pending the Court's determination as to the parties respective rights, obligations and liabilities; and

C)     An order providing a monetary judgment in favor of Principal Life in an amount to be determined at the time of trial representing the amount of commissions paid, expenses incurred, and damages sustained, less premiums received; and

D)     An order awarding prejudgment interest, post judgment interest, costs of suit, reasonable attorney fees and such other relief as the Court deems equitable and just.

## FOURTH COUNT

58.     Principal Life repeats and realleges each and every allegation contained in paragraphs 1 through 57 as if same were fully set forth at length herein.

59.     Werzberger and Nechemia Werzberger failed to satisfy the conditions precedent for coverage under the policy to take effect.

60.     The application for issuance of the policy, executed by Werzberger and Nechemia Werzberger, and submitted to Principal Life, provides that insurance coverage does not take effect unless, on the delivery date, among other things, the answers to the application are still true and complete and there have been no changes in the health or insurability of the proposed

insured from the date the application was submitted.

61.    In pertinent part, the Application provides:

Except as provided by the Conditional Receipt, I understand and agree that if a policy is issued as other than applied for or without a premium deposit (C.O.D.), then policy coverage is not effective and the Company shall incur no policy liability unless:

1) A policy issued on this application has been physically delivered to and accepted by the owner and the first premium paid; and

2) At the time of such delivery and payment, the person to be insured is actually in the state of health and insurability represented in this application, medical questionnaire, or amendment that becomes a part of this application; and

3) The Part D or the Acknowledgment of Delivery form is signed by me and the Proposed Insured (if different than me) and dated at delivery.

62.    In executing the application for the issuance of life insurance, Nechemia Werzberger and Werzberger each agreed that they adopted all statements made in the Application and agreed to be bound by them.

63.    On the date that the Policy was delivered, and the initial premium paid, all answers on the application were not true and complete and, upon information and belief, Werzberger was not in the state of insurability represented in the application and, as a result, no contract was formed and insurance coverage did not take effect.

**WHEREFORE**, Principal Life demands judgment against the defendants, and each of them, for relief more particularly described as follows:

A)    An order specifically enforcing the conditions precedent to the effectiveness of coverage under and pursuant to the Policy of life insurance bearing policy number 6089123; and

B)    An order declaring and adjudging the Policy to be null, void, rescinded, *ab initio*;

and

C)     An order declaring that Principal Life is entitled to retain all premiums paid under the Policy as an offset against damages, costs, fees and expenses incurred by Principal Life on account of the defendants' fraudulent conduct as necessary to restore Principal Life to its pre-contract position; and/or in the alternative permitting Principal Life to deposit with the Clerk of the Court monies representing premiums received for the policy to be held pending the Court's determination as to the parties respective rights, obligations and liabilities; and

D)     An order providing a monetary judgment in favor of Principal Life in an amount to be determined at the time of trial representing the amount of commissions paid, expenses incurred, and damages sustained, less premiums received; and

E)     An order awarding costs of investigation, reasonable attorney fees, costs of suit, prejudgment interest, post judgment interest and such other relief as the Court deems equitable and just.

## FIFTH COUNT

64.     Principal Life repeats and realleges each and every allegation contained in paragraphs 1 through 63 as if same were fully set forth at length herein.

65.     As is more fully set forth herein, the defendants knowingly and intentionally misrepresented, concealed and/or failed to disclose the occurrence of events as well as facts and information elicited in the applications which materially affected the initial and continued right and entitlement to receive the Policy and/or any benefit thereunder, in violation of the New Jersey Insurance Fraud Prevention Act and, in particular, N.J.S.A. 17:33A-4.

66.     As is more fully set forth herein, the defendants knowingly and intentionally assisted, conspired with and/or urged each other to knowingly and intentionally misrepresent,

20

conceal and/or fail to disclose the occurrence of events as well as facts and information elicited in the application which materially affected the initial and continued right to receive the Policy and/or any benefit thereunder, in violation or the New Jersey Insurance Fraud Prevention Act and, in particular, N.J.S.A. 17:33A-4.

67.    As is more fully set forth herein, the defendants knowingly and intentionally benefited, both directly and indirectly, from their knowing and intentional misrepresentations, concealment and/or failures to disclose the occurrence of events as well as facts and information elicited in the applications, which materially affected the initial and continued right and entitlement to receive the Policy and/or any benefit thereunder, in violation of the New Jersey Insurance Fraud Prevention Act and, in particular, N.J.S.A. 17:33A-4.

68.    As is more fully set forth herein, the defendants knowingly and intentionally misrepresented, concealed, and/or failed to disclose the occurrence of events as well as facts and information elicited in the applications which materially affected their initial and continued right and entitlement to receive the Policy and/or any benefit thereunder, in violation of the New Jersey Insurance Fraud Prevention Act and, in particular, N.J.S.A. 17:33A-4.

69.    The acts and omissions of the defendants as set forth herein constitute a violation of the New Jersey Insurance Fraud Prevention Act, and as a consequence of such violation, Principal Life has and will continue to sustain damages.

**WHEREFORE,** Principal Life demands judgment against the defendants, and each of them, for relief more particular described as follows:

A)    An order declaring and adjudging the Policy of life insurance bearing policy no. 6089123 to be null and void and rescinded, *ab initio*; and

B)    An order declaring Principal Life is entitled to keep all premiums paid

21

under the Policy of life insurance as off set against damages, costs, fees and expenses incurred by Principal Life on account of the defendants fraudulent conduct as necessary to restore Principal Life to is pre-contract position and/or in the alternative permitting Principal Life to deposit with the Clerk of the Court monies representing premiums received for the Policy of life insurance to be held pending the Court's determination as to the parties respective rights, obligations and liabilities; and

C)      An order providing a monetary judgment in favor of Principal Life in an amount to be determined at the time of trial representing the amount of commissions paid, expenses incurred, and damages sustained, less premiums received; and

D)      An order awarding compensatory, consequential and treble damages, costs of investigation and attorney fees as authorized by the New Jersey Insurance Fraud Prevention Act; and

E)      An order awarding prejudgment interest, post judgment interest, costs of suit, reasonable attorney fees and such other relief as the Court deems equitable and just.

## SIXTH COUNT

70.     Principal Life repeats and realleges each and every allegation contained in paragraphs 1 through 69 as if same were fully set forth at length herein.

71.     The Policy is an illegal and fraudulent STOLI, or stranger owned life insurance, policy.

72.     There was no time during which Werzberger or any of his family members were the beneficial owners of the Policy.

73.     STOLI policies are in violation of public policy and are unenforceable.

74.     The Policy is void and unenforceable.

**WHEREFORE**, Principal Life demands judgment against the defendants, and each of them, for relief more particularly described as follows:

A) An order declaring and adjudging the Policy of life insurance bearing number 6089123 to be null, void, and rescinded, *ab initio*; and

B) An order declaring that Principal Life is entitled to retain all premiums paid under the Policy as an offset against damages, costs, fees and expenses incurred by Principal Life on account of defendants' fraudulent conduct as necessary to restore Principal Life to its pre-contract position; and/or in the alternative permitting Principal Life to deposit with the Clerk of the Court monies representing premiums received for the Policy to be held pending the Court's determination as to the parties respective rights, obligations and liabilities; and

C) An order providing a monetary judgment in favor of Principal Life in an amount to be determined at the time of trial representing the amount of commissions paid, expenses incurred, and damages sustained, less premiums received; and

D) An order awarding costs of investigation, reasonable attorney fees, costs of suit, prejudgment interest, post judgment interest and such other relief as the Court deems equitable and just.

## SEVENTH COUNT

75. Principal Life repeats and realleges each and every allegation contained in paragraphs 1 through 74 as if same were fully set forth at length herein.

76. Nechemia Werzberger and Werzberger owed a duty to Principal Life to provide honest, truthful, and complete responses in the Application seeking issuance of the Policy.

77. Nechemia Werzberger and Werzberger further owed a duty to Principal Life to advise it of any changes or omissions in their initial Application responses up to and including

23

the time of the issuance, delivery, and acceptance of the Policy and the payment of the first premium.

78.    Nechemia Werzberger and Werzberger failed to advise Principal Life of changes and omissions in their initial Application responses prior to, and at the time of, the issuance, delivery, acceptance of the Policy, and payment of the first premium.

79.    Nechemia Werzberger and Werzberger failure to advise Principal Life of such changes and omissions in their Application responses constitutes false material representations.

80.    Nechemia Werzberger and Werzberger breached their duty to Principal Life to act in good faith and fair dealing in the issuance of the Policy.

81.    As a direct and proximate result of the Nechemia Werzberger and Werzberger's breach of their duties of honesty, good-faith and fair dealing, Principal Life issued the Policy and has otherwise sustained damages.

82.    Principal Life has no adequate remedy at law and therefore seeks that the Policy be declared null and void and rescinded, *ab initio*.

**WHEREFORE**, Principal Life demands judgment against the defendants, and each of them, for relief more particularly described as follows:

A)    An order declaring and adjudging the Policy of life insurance bearing policy number 6089123 to be null, void, rescinded *ab initio*; and

B)    An order declaring that Principal Life is entitled to keep all premiums paid under the Policy as an offset against damages, costs, fees and expenses incurred by Principal Life on account of defendants' fraudulent conduct as necessary to restore Principal Life to its pre-contract position; and/or in the alternative permitting Principal Life to deposit with the Clerk of the Court monies representing premiums received for the Policy to be held pending the Court's

determination as to the parties respective rights, obligations and liabilities; and

C)      An order providing a monetary judgment in favor of Principal Life in an amount to be determined at the time of trial representing the amount of commissions paid, expenses incurred, and damages sustained, less premiums received; and

D)      An order awarding costs of investigation, reasonable attorney fees, costs of suit, prejudgment interest, post judgment interest and such other relief as the Court deems equitable and just.

McElroy, Deutsch, Mulvaney & Carpenter, LLP
Attorneys for Plaintiff, Principal Life Insurance Company

By: _____
                Steven P. Del Mauro

Dated:  January 15, 2010
1345168_1

## CERTIFICATION PURUSANT TO LOCAL CIVIL RULE 11.2

Pursuant to Local Civil Rule 11.2, I certify under penalty of perjury that the matter in controversy is not subject to any other known action pending in any court or of any pending arbitration or administrative proceeding.

McElroy, Deutsch, Mulvaney & Carpenter, LLP
Attorneys for Plaintiff, Principal Life Insurance Company

By: _____
                Steven P. Del Mauro

Dated:  January 15, 2010

## <u>CERTIFICATION PURUSANT TO LOCAL CIVIL RULE 201.1(d)(3)</u>

Pursuant to Local Civil Rule 201.1(d)(3), I certify under penalty of perjury that the damages recoverable in this action exceed the sum of $150,000, exclusive of costs and interest.

McElroy, Deutsch, Mulvaney & Carpenter, LLP
Attorneys for Plaintiff, Principal Life Insurance Company

By: _____
Steven P. Del Mauro

Dated: January 15, 2010

1345168_1